# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 11-185<br>CIVIL ACTION NO. 14-2356 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| GERALD CORTEZ NEEDHAM | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to vacate under 28 U.S.C. § 2255 filed by Defendant Gerald Needham ("Needham"). [Record Document 103]. Needham raises several issues, mostly concerning allegedly ineffective assistance of his trial and appellate counsel. [Record Document 106]. Because Needham has not demonstrated his entitlement to habeas relief, the motion is **DENIED**.

## I.   Background

In April 2011, three people were murdered in an appliance store in Bossier City, Louisiana. [Record Document 40 at 1]. After Needham was identified as the assailant, an arrest warrant was issued along with a search warrant for Needham's house. [*Id.* at 4–5]. A search uncovered several kinds of ammunition in various locations in his home. [*Id.* at 6]. Needham was arrested for the triple murder and, after executing a *Miranda* waiver, denied involvement in the homicides, but admitted ownership of the ammunition. [*Id.* at 8]. The state brought murder charges, which were dismissed once the federal court issued a warrant to arrest Needham for

being a felon in possession of ammunition. [*Id.* at 9]. After the federal arrest warrant was executed, Needham denied owning the ammunition, but admitted knowing the location of some of it. [*Id.* at 10–11]. Needham moved to suppress the ammunition and all of his incriminating statements. [Record Document 25]. This Court denied that motion. [Record Document 40].

A jury found Needham guilty of one count of illegal possession of ammunition by a convicted felon. [Record Document 64]. This Court departed from the Sentencing Guidelines after finding that the applicable criminal history category did not adequately account for Needham's extensive criminal record. [Record Document 85 at 2]. Needham appealed, raising three claims of error: insufficiency of the evidence, invalidity of the arrest warrant, and the upward departure. *See United States v. Needham*, 546 F. App'x 353, 354–55 (5th Cir. 2013) (per curiam). The Fifth Circuit affirmed. *Id.* at 357.

## II.  The Instant Motion

Needham asserts various grounds of error in his § 2255 motion. [Record Documents 103 and 106]. He begins by claiming that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he knowingly possessed the ammunition. [Record Document 106 at 2]. He then argues that the Government violated the Federal Rules of Evidence by referring to his arrest for the triple homicide and showing a video of that arrest. [*Id.* at 5]. The majority of his motion concerns a series of ineffective-assistance-of-counsel claims. [*Id.* at 2]. He claims that his trial counsel, Alex Washington ("Washington"), provided ineffective assistance by waiving Needham's right to be present at private questioning of venire members, by waiving Needham's right to be present at all critical phases of the trial, and by failing to object to the

introduction of Needham's arrest for homicide and the video of that arrest. [*Id.* at 3–4, 6]. Needham also asserts that the cumulative error doctrine requires awarding him a new trial. [*Id.* at 7]. Finally, he alleges that his appellate counsel was ineffective for failing to raise on appeal each of the claims raised in the instant motion. [*Id.* at 8–9].

The Government has answered, arguing that Needham's attorneys provided effective assistance, that the sufficiency-of-the-evidence claim was disposed of on direct appeal, and that claims related to the admission of prejudicial evidence are procedurally barred. [Record Document 113-1 at 5–11]. After noticing that Needham had represented to this Court that he had timely filed a reply brief but that this brief was never received by the clerk's office, the Court granted Needham additional time to refile. [Record Documents 117 and 118]. Needham did not take advantage of this Court's offer.[1]

### III.   Standard of Review

A federal prisoner may test the legality of his detention by "mov[ing] the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a) (2012); *see United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) (quoting *Kuhn v. United States*, 432 F.2d 82, 83 (5th Cir. 1970)). Where there has been such a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him

---

[1] The minute entry granting Needham time to refile was sent to the USP - Pollock address that he had provided to the Court. The minute entry was returned as undeliverable because Needham had been transferred to a different Bureau of Prisons facility. [Record Document 119]. Needham did not update the Court with his new address. Upon locating Needham at USP - Big Sandy, the Court instructed the Clerk of Court to mail a copy of the minute entry to Needham at that facility.

or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

Relief under § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). A district court may deny a § 2255 motion without conducting any type of evidentiary hearing if the defendant fails to "present[] 'independent indicia of the likely merits of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)). A hearing is also unnecessary if the issues were raised on direct appeal or do not describe a constitutional violation. *United States v. McCollom*, 664 F.2d 56, 59 (5th Cir. 1981) (citing *Buckelew v. United States*, 575 F.2d 515 (5th Cir. 1978)).

## IV.   Law and Analysis

### A.   Timeliness

With certain exceptions not relevant here, a § 2255 motion must be made within one year of the date on which the movant's conviction became final. 28 U.S.C. § 2255(f). Following an unsuccessful appeal after which the defendant does not seek a writ of certiorari, a conviction becomes final when the time expires for filing the writ. *Clay v. United States*, 537 U.S. 522, 525 (2003). A writ of certiorari must be filed within ninety days of the entry of judgment. *Id.* (citing Supreme Court Rule 13(1)). The Fifth Circuit denied Needham's appeal on April 22, 2013. *Needham*, 546 F. App'x at 353. Thus, his time to petition for certiorari expired on July 21, 2013. Because he filed his § 2255 motion on July 17, 2014, his motion is timely.

4

**B.     Sufficiency of the Evidence**

Because the Government proceeded under a theory of Needham's constructive possession of the ammunition, Needham argues that the evidence presented at trial was insufficient to establish his knowledge beyond a reasonable doubt. [Record Document 106 at 2]. "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)). As the Fifth Circuit heard and rejected Needham's sufficiency-of-the-evidence claim on appeal, *Needham*, 546 F. App'x at 354–55, this Court cannot now consider it. His motion is denied as to this claim.

**C.     Presence During Voir Dire**

Needham argues that Washington provided ineffective assistance of counsel by waiving Needham's right to participate in the voir dire of individual venire members that took place in the robing room. [Record Document 106 at 3]. Because the triple homicide and Needham's subsequent federal weapons charge had received substantial media coverage, the Court conducted extensive voir dire of venire members who reported having heard about or having discussed either the homicide or Needham's federal case. [Record Documents 57 at 2 and 96 at 67–176]. In addition, the Court engaged in ordinary sorts of private voir dire questions regarding jurors' criminal histories, health concerns, and attitudes towards law enforcement. [Record Document 96 at 67–176]. Ultimately, twenty-six of the fifty-one venire members were questioned privately. [*Id.*].

Given Needham's criminal history and at the request of the United States Marshals Service, the Court ordered that Needham was to be secured in leg irons during the trial. [Record Document 56]. In order to reduce the risk that these restraints would prejudice the jury, Needham was always seated before the jurors entered the courtroom and was only escorted from the courtroom after they had exited. [Record Document 96 at 67]. In light of security concerns Needham's presence in the robing room would have raised, the Court and counsel agreed that individual voir dire would take place without Needham's presence. [Record Document 97-1 at 208–09]. Washington expressly waived Needham's right to be present, and Needham did not object at that time. [*Id.* at 209]. Needham now claims that he told his attorney that he wished to be present at the entire voir dire, [Record Document 106 at 3], but Washington's affidavit reflects that he discussed the proposed individual voir dire procedure with Needham and that Needham voiced no objection, [Record Document 113-2 at 1–2].

### 1.    Standard for Ineffective Assistance of Counsel

A § 2255 motion is an acceptable vehicle through which to raise initial claims of ineffective assistance of trial or appellate counsel. *Massaro v. United States*, 538 U.S. 500, 503–04 (2003). To successfully state an ineffective-assistance-of-counsel claim, a movant must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The movant bears the burden of proof. *See id.* If he fails to establish either prong of the *Strickland* test, then counsel's performance was constitutionally effective. *Id.*; *see also Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 697).

As to the first deficient-performance prong, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted) (citing *Michel*, 350 U.S. at 101). If a tactical decision is "conscious and informed," it "cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). "Judicial scrutiny of counsel's performance must be highly deferential," and the court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

To establish prejudice, a § 2255 movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant is not prejudiced if the "ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Nevertheless, self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying *Strickland*'s prejudice element." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). Rather, a defendant must affirmatively prove the existence of prejudice. *See United States v. Kayode*, 777 F.3d 719, 724–25

(5th Cir. 2014). Because both prongs of *Strickland* must be satisfied, a court may reject an ineffective-assistance-of-counsel claim upon an insufficient showing of either deficient performance or prejudice, without inquiry into the other prong. *Strickland*, 466 U.S. at 697.

## 2. Application

A defendant's right to be present at voir dire is protected by the Due Process Clause of the Fifth Amendment and Rule 43 of the Federal Rules of Criminal Procedure. *United States v. Curtis*, 635 F.3d 704, 715 (5th Cir. 2011). However, a defendant's right to be present at jury selection, like other procedural rights, is waivable. *United States v. Alikpo*, 944 F.2d 206, 208 (5th Cir. 1991). The fundamental nature of the right to be present during jury selection gives rise to a presumption against waiver. *United States v. Thomas*, 724 F.3d 632, 643 (5th Cir. 2013) (citing *Alikpo*, 944 F.2d at 209–10). Any waiver must be "must be particularly informed or voluntary." *Id.* Because a reviewing court must be able to evaluate the waiving party's volition and knowledge, the Fifth Circuit has found an invalid waiver where the waiver was not made on the record, *id.* at 644, or the statements ostensibly indicating waiver were ambiguous, *Alikpo*, 944 F.2d at 209. In this case, the record reflects the following exchange:

> [THE PROSECUTOR]: Your Honor, we had discussed on the jury selection process if someone mentions [Defendant's arrest for triple homicide], we have to take them in the side room to discuss issues that we don't want to disclose to the rest of the jurors, that counsel alone would come to that meeting. I want to make sure we are still on that.
>
> THE COURT: Oh, thank you, sir for putting that on the record.
>     Mr. Washington, the Court understands that if it is necessary for – and I'm sure to will be in some instances – a number of jurors, for example, have noted health problems. That if it is necessary for us to go into a – to interview the potential jurors individually, that you will waive the defendant's presence at that interview?

MR. WASHINGTON: That's correct.

[Record Document 97-1 at 208–09]. Needham was present in the courtroom during this exchange and did not object. [*Id.* at 194, 209]. Given Needham's claim that he told Washington that he wanted to be present during voir dire, [Record Document 106 at 3], and Washington's affidavit that he discussed the proposed procedure with Needham, [Record Document 113-2], the Court concludes that Needham was aware that the Court was planning to conduct private voir dire in his absence. Moreover, Needham does not represent that his instruction to Washington to ensure that Needham was present throughout voir dire occurred after Washington explained the proposed voir dire procedure. There is thus no evidence that Washington ignored an affirmative request by his client. In the absence of any "independent indicia" that Needham was ignorant of his right to be present or coerced into waiving it, *Reed*, 719 F.3d at 373 (quoting *Cavitt*, 550 F.3d at 442), the Court credits Washington's affidavit and finds that the waiver was knowing and voluntary.

In addition to being knowing and voluntary, waivers of constitutional rights must comply with procedures whose formality depends upon the significance of the right being waived. *Gonzalez v. United States*, 553 U.S. 242, 248 (2008) (quoting *New York v. Hill*, 528 U.S. 110, 114 (2000)). Thus, certain rights must be waived by a defendant personally, while others may be waived by counsel. *Id.* (quoting *Hill*, 528 U.S. at 114). For instance, counsel may waive a defendant's right to have voir dire conducted by an Article III judge. *See id.* at 250. On the other hand, choices such as pleading guilty, waiving a jury, testifying, and appealing are so significant

that a defendant must personally waive these rights. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

Needham argues that the right to be present throughout jury selection is so fundamental that personal waiver is required. [Record Document 106 at 3]. The Fifth Circuit has not addressed whether a defendant must personally waive the right to be present at a substantial majority of voir dire, but has identified other procedural rights that may be waived through counsel, such as the right to a twelve-person jury, the right to have an Article III judge preside over a civil commitment hearing, and the right to challenge the racially discriminatory composition of a grand jury. *United States v. Gonzalez*, 483 F.3d 390, 394 (5th Cir. 2007) (citing *United States v. Spiegel*, 604 F.2d 961, 964–66 (5th Cir. 1979); *United States v. Muhammad*, 165 F.3d 327, 332–33 (5th Cir. 1999); *Winters v. Cook*, 489 F.2d 174, 179 (5th Cir. 1973) (en banc)), *aff'd*, 553 U.S. 242. The Fourth, Sixth, and Seventh Circuits have held that counsel may waive a defendant's right to be present at all of voir dire. *United States v. Riddle*, 249 F.3d 529, 534 (6th Cir. 2001); *Johnson v. Boyd*, 6 F. App'x 361, 363 (7th Cir. 2001); *United States v. Ford*, 88 F.3d 1350, 1369 (4th Cir. 1996). Counsel may waive the right because, provided that the waiver is knowing and voluntary, an on-the-record colloquy would be "burdensome and impractical." *Riddle*, 249 F.3d at 535. Indeed, waiver can be implied by a failure of either a defendant or counsel to object to the defendant's absence. *Ford*, 88 F.3d at 1369; *Tankleff v. Senkowski*, 135 F.3d 235, 247 (2d Cir. 1998) ("The far more likely explanation for [the defendant's] absence [from individual voir dire] is that he and his lawyers did not think it was important for him to be present at this tedious, routine screening designed to eliminate jurors who had been prejudiced by pretrial

publicity."). According to this Court's research, only the D.C. Circuit has expressly concurred with Needham's position and held that if a defendant is in custody, a waiver of his right to be present at voir dire must be made personally on the record. *United States v. Gordon*, 829 F.2d 119, 125 (D.C. Cir. 1987).

There are thus two separate questions that this Court must answer regarding Needham's trial: (1) was Washington ineffective for waiving Needham's right to be present at the individual voir dire without placing Needham's personal consent on the record; and (2) was Washington ineffective for agreeing to a voir dire procedure that required waiving Needham's right to be present? [Record Document 106 at 3]. As to the first question, "there is no general duty on the part of defense counsel to anticipate changes in the law." *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997)). Given that no Supreme Court or Fifth Circuit precedent holds that a defendant must personally waive the right to be present at voir dire and that persuasive authority approves waiver through counsel, it cannot have been objectively unreasonable for Washington to waive the right on Needham's behalf, in Needham's presence, and after discussing the proposed procedure with Needham.

Turning to the second question, the Fifth Circuit has recognized that a defendant's presence during voir dire enables him to assist in the exercise of his peremptory challenges. *Curtis*, 635 F.3d at 715 (quoting *United States v. Washington*, 705 F.2d 489, 497 (D.C. Cir. 1983) (per curiam)). Thus, counsel's decision to allow a client to waive this right requires that counsel balance the importance of the defendant's participation against the benefits of allowing private questioning of jurors outside of the defendant's presence.

11

The purpose of voir dire is to empanel an impartial trier of fact

> by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). Thus, the effectiveness of voir dire turns upon the extent to which the procedures employed reveal these biases. *See, e.g., Horton v. Allen*, 370 F.3d 75, 82 (1st Cir. 2004) (collecting cases). Courts have recognized that private questioning of venire members may be helpful in this regard. As a practical matter, individualized voir dire "avoid[s] the possibility of a single potential juror's prejudicial knowledge tainting the entire venire." *Johnson*, 6 F. App'x at 363 (citing *United States v. Pergler*, 233 F.3d 1005, 1009 (7th Cir. 2000)). In Needham's case, having venire members moving in and out of his presence in a small room would have increased the likelihood that jurors may have learned that he was shackled—a clearly prejudicial fact. [Record Document 56]. *See United States v. Yepiz*, 673 F. App'x 691, 698–99 (9th Cir. 2016) (affirming a procedure that excluded defendants from individual voir dire in the jury room in order to keep jurors from discovering that the defendants were shackled); *cf. Riddle*, 249 F.3d at 533 (noting that if United States Marshals must accompany a defendant wherever he goes in the courthouse, then having him participate in individual voir dire in chambers might prejudice the defendant by suggesting that he was dangerous).

Private questioning may "encourage honest answers to the voir dire questions." *Press-Enter. Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501, 515 (1984) (Blackmun, J., concurring). "Jurors may be reluctant to admit their prejudices before spectators or others

present in the courtroom during the voir dire." *People v. McCray*, 443 N.E.2d 915, 918 (N.Y. 1982). Jurors may also be less likely to confess an inability to be impartial if the defendant who would be affected is seated across a table from them. Because a lack of truthful information regarding venire members' biases negatively impacts the ability of a defendant and his attorney to intelligently challenge venire members for cause and to exercise peremptory challenges, it can be a rational decision to conduct private voir dire outside of a defendant's presence.

Washington attests that "[i]t was agreed that . . . Needham would not be present during this individual voir dire due to the Court's security concerns and other factors." [Record Document 113-2 at 1]. Given the media coverage of the triple homicide as well as of Needham's federal case, empaneling an unbiased jury required ascertaining venire members' prior knowledge and their ability to disregard it when deciding his case. Although Washington does not expressly mention reducing the likelihood that the jurors would learn that Needham was shackled, avoiding biasing the entire venire, or obtaining more forthright responses in order to detect bias, all of these are readily understandable as "other factors" justifying waiver of Needham's right to be present at voir dire. Because reasonable grounds thus existed to exclude Needham from individual voir dire, Washington did not provide objectively deficient representation by agreeing to the individual voir dire procedure used in this case. As Washington's representation was not deficient, the Court need not examine whether Needham was prejudiced by his absence from the private voir dire.[2] *See Strickland*, 466 U.S. at 697. The Court thus holds that Washington did

---

[2] Although Needham was not present during individual voir dire, all of the questioning by the Court and the attorneys was transcribed. [Record Document 96]. The transcript was originally filed under seal and thus was unavailable to Needham when he prepared his motion and accompanying memorandum. However, the Court granted the Government's motion to

not render ineffective assistance by agreeing to waive Needham's right to presence for all of voir dire.

Needham also argues that his appellate counsel was ineffective for failing to challenge both the voir dire procedure and the waiver of Needham's right of presence. [Record Document 106 at 8–9]. Appellate counsel must identify all "[s]olid, meritorious arguments based on directly controlling precedent." *United States v. Reinhardt*, 357 F.3d 521, 525 (5th Cir. 2004) (citing *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000)). Having identified all potential arguments, appellate counsel may still decline to raise certain claims without rendering a deficient performance unless the unraised claims are "plainly stronger than those actually presented to the appellate court." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). On appeal, Needham's counsel raised Needham's three strongest claims. *Needham*, 546 F. App'x at 354. The sufficiency-of-the-evidence claim concentrated on the lack of physical evidence linking Needham to the ammunition, the challenge to the denial of his motion to suppress sought to exclude his confessions, and the challenge to the sentence attacked this Court's upward departure from the Sentencing Guidelines. *Id.* at 355–57. As these claims all have substantially more legal basis than the claims in the instant motion, Needham's appellate

---

unseal the transcript three months before Needham's reply brief was to be filed. [Record Documents 111 and 115]. Needham thus had the opportunity to provide facts to support his claim that he was prejudiced because he was "deprived of an opportunity to assess the appropriateness of utilizing peremptory challenges." [Record Document 106 at 3]. It is possible that Needham attempted to address the issue of prejudice in a reply brief that he mailed but that the Court never received. [Record Document 117]. However, the Clerk of Court mailed Needham a copy of the docket sheet on November 12, 2015 showing that the Court had not received this brief. [Record Document 17-1]. Therefore, Needham has had three years in which to point to evidence establishing the existence of prejudice and has not done so.

counsel's decision to refrain from raising claims related to Needham's absence from individual voir dire was not objectively deficient. Therefore, the Court denies Needham's motion as to these claims.

### D. Presence During Critical Stages of the Trial

Needham argues that his trial counsel was ineffective by waiving his right to be present at unspecified points during the trial. [Record Document 106 at 4]. To the extent that this claim merely repackages Needham's ineffective-assistance-of-counsel claim related to his absence from much of voir dire, it fails for the reasons discussed above. To the extent that Needham refers to some other portion of the trial, the claim is denied as Needham has not specified which portions he missed nor how the outcome of the trial would have been different had he been present.

### E. Evidence Related to Needham's Arrest

Needham argues that by admitting references to his arrest and video footage of that arrest, the Court violated Rule 404(b) of the Federal Rules of Evidence. [*Id.* at 5]. Relatedly, he argues that Washington's failure to object to this evidence constituted ineffective assistance of counsel. [*Id.* at 6]. The Government responds that Needham's first claim is procedurally barred and that the second claim fails because the name and details of the crime of arrest were not disclosed to the jury. [Record Document 113-1 at 5, 9–10].

Needham was initially arrested on the state homicide charge by the Bossier City Police Department and United States Marshals Service. [Record Document 35 at 7]. Following that arrest, he confessed to owning some of the ammunition found in his home.  [Record

Documents 97-1 at 282 and 97-2 at 358]. Subsequently, the United States Attorney brought federal felon-in-possession charges, and the state of Louisiana dropped the homicide charge. [Record Document 40 at 9]. Needham was then brought to trial for being a felon in possession of ammunition. Although the fact that he was arrested was discussed at trial, witnesses did not reveal that he had been arrested for homicide.

Rule 404(b) prevents the introduction of evidence of other crimes or wrongs in order to prove a person's character, Fed. R. Evid. 404(b), but a violation of the Federal Rules of Evidence is not cognizable on collateral review, *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir. 1977) (citing *Hills v. Henderson*, 529 F.2d 397 (5th Cir. 1976)). Thus, to the extent that Needham alleges that he is entitled to habeas relief because evidence about his arrest violated Rule 404(b), his § 2255 motion must be denied.

Although an erroneous evidentiary ruling is not automatically reviewable on a § 2255 motion, if the ruling resulted in a fundamentally unfair trial, then the resulting due process violation is grounds for habeas relief. *Id.* (citing *Barnard v. Henderson*, 514 F.2d 744 (5th Cir. 1975)). Needham frames his critique of the evidence in terms of its "highly prejudicial" effect. [Record Document 106 at 5]. Because this Court construes pro se § 2255 motions liberally, *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (per curiam), it interprets Needham's motion as asserting a denial of due process. Habeas relief is appropriate only if the prejudicial evidence admitted was "'material in the sense of a crucial, critical, highly significant factor'" in the trial. *Woods*, 547 F.2d at 271 (quoting *Corpus v. Beto*, 469 F.2d 953 (5th Cir. 1972)). Materiality

is determined in light of the totality of the circumstances. *United States v. Rusmisel*, 716 F.2d 301, 305 (5th Cir. 1983).

### 1.    Testimony and Argument on the Fact of Needham's Arrest

"A section 2255 movant who fails to raise a constitutional or jurisdictional issue on direct appeal waives the issue for a collateral attack on his conviction, unless there is cause for the default and prejudice as a result." *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000) (citing *United States v. Patten*, 40 F.3d 774, 776–77 (5th Cir. 1994) (per curiam); *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981)). On direct appeal, Needham did not challenge the admission of testimony that he had been arrested on a serious state charge. *Needham*, 546 F. App'x at 354. So, to excuse his procedural default, he must show cause and prejudice. *See Kallestad*, 236 F.3d at 227. Ineffective assistance of appellate counsel can satisfy the cause and prejudice prongs, but must still meet the *Strickland* test; it must have been objectively unreasonable for appellate counsel to fail to raise this issue, and Needham must have been prejudiced by that failure. *See Higgins v. Cain*, 720 F.3d 255, 260–61 (5th Cir. 2013) (quoting *Strickland*, 466 U.S. at 687).

To determine whether omitting a claim that introduction of testimony that Needham had been arrested "fell within the broad range of reasonable professional assistance," *Riley v. Cockrell*, 339 F. 3d 308, 315 (5th Cir. 2003) (citing *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997)), the Court will examine the merits of Needham's underlying claim, *see Reinhart*, 357 F.3d at 525 (5th Cir. 2004). Needham was arrested by the state of Louisiana for a triple homicide. [Record Document 106 at 5]. Given that he was being tried by the federal government for the

significantly less serious offense of being a felon in possession of ammunition, the Court concluded that evidence of the crime of arrest would be unfairly prejudicial. [Record Document 97-1 at 202–03]. *See United States v. Davidson*, 449 F.3d 849, 853 (8th Cir. 2006) (opining that it "certainly would have been reasonable" for a court to refuse to admit evidence that a defendant in a felon-in-possession case was arrested on a homicide charge). Accordingly, this Court ordered counsel to refer to the homicide arrest as one made for a "serious crime" or a "serious felony" and charged them to so instruct their witnesses. [Record Documents 96 at 177–78 and 97-1 at 203]. Review of the transcript indicates that the Court's order was complied with. Therefore, neither testimony nor argument introduced the jury to the fact that Needham's arrest was for a triple homicide. Given that the homicide arrest was the precipitating event to Needham's first confession to possession of the ammunition, the fact that he was arrested for some crime was relevant to a central issue at trial. *See Davidson*, 449 F.3d at 853 (quoting *United States v. Malik*, 345 F.3d 999, 1002 (8th Cir. 2003)) (holding that evidence establishing why officers were present in a particular location is "relevant . . . to explain the police conduct and to bolster the officer's credibility"). In light of the arrest's relevance, this Court concludes that testimony establishing that Needham was arrested for a serious felony was not so prejudicial as to deprive him of due process.

Because Needham's trial was not rendered fundamentally unfair by references to the arrest itself, appellate counsel did not render ineffective assistance by failing raise this non-meritorious issue. *See Broxton v. Cockrell*, 278 F.3d 456, 458 (5th Cir. 2002) (per curiam); *cf. Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001) ("[C]ounsel acted objectively reasonably in declining

to raise an unreviewable issue."). In the absence of ineffective assistance of appellate counsel, Needham has not shown cause for his procedural default. His motion is thus denied as to his claim that testimony regarding the fact of his arrest was erroneously admitted and as to his claim that his appellate counsel was ineffective in failing to raise this issue on direct appeal.

Needham also argues that Washington's failure to object to testimony regarding his arrest constituted ineffective assistance of counsel. [Record Document 106 at 6]. According to the testimony of two officers, Needham confessed to owning the ammunition found in his home during an interview following the homicide arrest. [Record Documents 97-1 at 282 and 97-2 at 358].[3] Washington originally proposed eliciting from these officers the fact that Needham was arrested for the triple homicide as well as the circumstances surrounding the investigation and dismissal of that charge. [Record Document 97-1 at 202–04]. After considering the issue, the Court ruled that the fact of the arrest was admissible because it was relevant to the subsequent confession that the Government intended to introduce. [*Id.* at 202]. However, the Court found that reference to the triple homicide would unfairly prejudice the defendant and that testimony about the surrounding murder investigation would confuse the jury. [*Id.* at 202–04]. To balance these competing interests, the Court ordered that the crime of arrest be referred to as a "serious crime" or a "serious felony." [Record Documents 96 at 177–78 and 97-1 at 203].

Since the Court had already denied a motion to suppress the confession, [Record Document 40], Washington needed to mitigate the impact of Needham's confession. In an

---

[3] A third officer testified that after Needham's arrest on the federal charge, Needham admitted that he "probably" placed some bullets in the bedroom of the home. [Record Document 97-2 at 416].

attempt to do so, Washington selected a theory of the case that depended upon the arrest being for a serious offense. No recording was made of Needham's admission to owning the ammunition found in his home. [Record Document 97-1 at 298–99]. Arguing that the absence of a recording is inconsistent with the fact that the interview followed an arrest for a serious crime, Needham's attorney invited the jury to infer that the police had fabricated the confession. [Record Documents 97-1 at 235–37 and 97-2 at 533–34, 536–38]. Given the limited options available, Washington's choice to argue that the confession was fabricated, which in turn relied on the relative seriousness of the charge of arrest, was "conscious and informed." *Crane*, 178 F.3d at 314 (quoting *Garland*, 717 F.2d at 206). As a result, Washington's failure to object to testimony that Needham was arrested for a "serious crime" did not violate Needham's Sixth Amendment right to effective assistance of counsel.

### 2. Video of Needham's Arrest

During the Government's case-in-chief, the prosecutor showed the jury video of Needham's arrest. [Record Document 97-1 at 249–54]. The entire video was introduced into evidence, but only selected clips were played, some with sound and some without. [*Id.* at 244, 249–54]. The trial transcript does not include the audio from the recording nor does it include time stamps for the portions played to the jury. However, the witness's description of the content as it was being played allows the Court to determine that some portion of approximately seven minutes of video was played to the jury.[4] At no point during those seven minutes of footage does the fact that Needham was arrested for a triple homicide become apparent.

---

[4] The portions played fell within an outside range of 18:25:51 to 18:32:15. In the physical file that contains the trial exhibits, the relevant CD is labeled "Government Exhibit 11."

Because Needham did not challenge the admission of the video on direct appeal, any such challenge by means of a § 2225 motion is procedurally defaulted in the absence of cause for the default and resulting prejudice. *See Kallestad*, 236 F.3d at 227 (citing *Patten*, 40 F.3d at 776–77; *Pierce*, 959 F.2d at 1301; *Capua*, 656 F.2d at 1037). As discussed above, ineffective assistance of counsel on direct appeal can satisfy the cause prong. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Thus, to enable this Court to review Needham's claim that admission of the arrest video was error, he must demonstrate that counsel's decision not to raise this issue on appeal was objectively unreasonable and that, if the issue had been raised, Needham would have prevailed on appeal. *See Busby v. Davis*, 892 F.3d 735, 757 (5th Cir. 2018) (quoting *Strikland*, 466 U.S. at 694; *Smith*, 528 U.S. at 285).

To examine the objective reasonableness of his appellate counsel's decision not to raise this issue, the Court will examine the underlying merits of Needham's contention that the video evidence rendered his trial fundamentally unfair. For the reasons discussed above, the fact of arrest is not so prejudicial as to undermine the fairness of Needham's trial. It follows that playing a video that also did not identify the crime of arrest respected Needham's right to a fair trial. Though a video may be more prejudicial than oral testimony under certain circumstances, the behavior of Needham and the officers during the arrest is relevant to credibility of the officers' testimony regarding Needham's subsequent confession. Because of this relevance, Needham's due process rights were not violated by admission of the video. Thus, Needham's appellate counsel was not ineffective for failing to raise this issue on direct appeal. In the absence of

ineffective assistance of counsel, Needham has not shown cause for his procedural default on his claim that showing the video of his arrest violated his constitutional rights.

Needham also challenges Washington's failure to object to the admission of the video. [Record Document 106 at 6]. Because claims of ineffective assistance of counsel may be raised for the first time on collateral review, *Massaro*, 538 U.S. at 503–04, this claim is not procedurally defaulted. To demonstrate ineffective assistance of counsel, Needham must establish that his attorney's failure to object to the video was both objectively unreasonable and prejudicial. *See Strickland*, 466 U.S. at 687. After the video had been playing for some time, the following exchange occurred:

> MR. WASHINGTON: Judge, I spoke to Mr. Needham. He is willing to stipulate that this officer read him his rights.
>
> THE COURT: Well, I think the Government has the right to put it into evidence.
>
> [THE PROSECUTOR]: Thank you. . . . .

[Record Document 97-1 at 253]. Because Washington had placed the professionalism and honesty of the arresting officers in controversy in his opening statement, [*id.* at 235–37], a video that bolstered the officers' credibility by showing that Needham was calm and that he was warned of his rights prior to his confession was relevant and admissible. As such, once the Court rejected Washington's offer to stipulate to the video's contents, a reasonable attorney could have concluded that an objection to playing the video at all would have been futile. *See Linicomn v. Thaler*, 358 F. App'x 549, 550–51 (5th Cir. 2009) (rejecting an ineffective assistance claim where objection "would likely have failed"); *cf. Rhoades v. Davis*, 852 F.3d 422, 433 (5th Cir. 2017) ("Counsel is not ineffective for failing to raise an unmeritorious objection."). Therefore, because

the video showed the arrest but did not mention the crime of arrest, Washington's performance was not objectively deficient. Because the first prong of the *Strickland* test is not met, there is no need to consider whether Needham was prejudiced by the video before concluding that Washington was not ineffective for declining to object to the video. Needham's motion is denied as to his claims related to admission of evidence concerning his arrest.

**F.     Cumulative Error**

Needham argues that even if some of the errors he alleges are individually harmless, cumulatively they require a new trial. [Record Document 106 at 7]. Under the cumulative error doctrine, "'an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.'" *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (quoting *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998)). Because the Court agrees with the Government that no error was committed, the cumulative error doctrine does not apply. Needham's motion is denied as to this claim.

**V.     Conclusion**

Because Needham has presented no independent evidence demonstrating the likely merits of his claims, the Court may deny his motion without an evidentiary hearing. The Court finds no constitutional infirmity in Needham's conviction, and so his § 2255 motion [Record Document 103] is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ___13th___ day of ___September___, 2018.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE